IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CHRISTY L. WILLIAMS,  §
                      §
Plaintiff             §
                      §
v.                    §          CIVIL ACTION No. 4:15-cv-00241
                      §
TARRANT COUNTY COLLEGE §
DISTRICT              §
                      §
                      §
Defendant.            §

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**I. Nature of the Case** ...............................................................................................................1

**II. Summary of the Motion** ....................................................................................................1

**III. Undisputed Facts** .............................................................................................................2

**IV. Argument Summary** .........................................................................................................8

**V. Argument and Authorities** ................................................................................................9

    **A. Summary Judgment Standard** ...............................................................................9

    **B. Plaintiff's FMLA Retaliation Claim is Barred by the Statute of Limitations** ........9

    **C. Plaintiff Cannot Meet her Burden of Proof on her Disability Discrimination Claim** .............................................................................................................................10

        **1. Plaintiff Has No Evidence that she Suffers from a Disability under the ADA or Texas Labor Code Prior to November 13, 2012** ...............................10

        **2. Plaintiff Cannot Prove that She Was Able to Perform the Essential Functions of the Job** ...........................................................................................14

        **3. Plaintiff Has No Evidence that She Was Treated Less Favorably than Non-Disabled Employees** ...............................................................................16

    **D. Plaintiff Cannot Sustain her Ultimate Burden of Proof to Support her Discrimination Claims** ...................................................................................................17

**1. TCCD Has Articulated a Legitimate, Non-Discriminatory Reason for Terminating Plaintiff's Employment** ...................................................................18

**VI. Conclusion** .......................................................................................................**19**

**VII. Prayer** ............................................................................................................**20**

**Certificate of Service** ...........................................................................................**21**

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Beaver v. Delta Air Lines, Inc.,*
43 F. Supp. 2d 685 (N.D. Tex. 1999) ....................................................................12

*Claymex Brick and Tile, Inc. v. Garza,*
216 S.W.3d 33 (Tex. App.—San Antonio 2006, no pet.) .......................................17

*Cortez v. Raytheon Co.,*
663 F. Supp. 2d 514 (N.D. Tex. 2009) ..................................................................10

*EEOC v. Louisiana Office of Community Services,*
47 F.3d 1438 (5th Cir. 1995) ...............................................................................19

*Giles v. General Elec. Co.,*
No. Civ-3-97-cv-2774, H, 1999 WL 202573 (N.D. Tex. April 6, 1999) ..................9

*Logan v. Nicholson,*
Civ. A-H-04-4178, 2006 WL 1492243 (S.D. Tex. May 30, 2006) ...................11, 12

*McDaniel v. IntegraCare Holdings, Inc.,*
901 F. Supp. 2d 863 (N.D. Tex. 2012) ..................................................................14

*McInnis v. Alamo Community College Dist.,*
207 F.3d 276 (5th Cir. 2000) ...............................................................................10

*Mendoza v. El Paso County,*
No. EP-11-cv-0221-KC, 2012 WL 1952278 (W.D. Tex. May 30, 2012) ...............18

*Pedroza v. Autozone, Inc.,*
536 F. Supp. 2d 679 (W.D. Tex. 2008) ..................................................................11

*Soileau v. Guilford of Maine, Inc.,*
105 F.3d 12 (1st Cir. 1997) .................................................................................11

*Wellner v. Town of Westport,*
154 F. Supp. 2d 360 (D. Conn. 2001) ....................................................................11

<u>Statutes</u>

29 U.S.C.A. § 2617(c) .............................................................................................9

42 U.S.C. § 12102(1) .............................................................................................10

42 U.S.C. § 12102(2)(A) **................................................................................................10**

Fed. R. Civ. P. 56(a) **........................................................................................................9**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CHRISTY L. WILLIAMS, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION No. 4:15-cv-00241 |
| | § | |
| TARRANT COUNTY COLLEGE | § | |
| DISTRICT | § | |
| | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Tarrant County College District ("**TCCD**"), Defendant, files this Brief in Support of its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. In support, TCCD respectfully shows the Court as follows:

### I.
### NATURE OF THE CASE

This case involves an employment dispute arising out of TCCD's decision to terminate Plaintiff's employment as an Instructional Associate in the writing lab of TCCD's Northwest Campus. Plaintiff alleges that TCCD discriminated and retaliated against her because of her alleged disability in violation of the ADA and Texas Labor Code. Plaintiff also alleges that TCCD's decision to terminate her employment was in retaliation for her use of leave under the FMLA.

### II.
### SUMMARY OF THE MOTION

TCCD is entitled to summary judgment because Plaintiff's FMLA retaliation claim is barred by the applicable two-year statute of limitations.  TCCD is also entitled to summary

judgment because Plaintiff cannot provide evidence of one or more essential elements to support her disability discrimination and retaliation claims under the ADA and the Texas Labor Code. Finally, TCCD is entitled to summary judgment because Plaintiff cannot sustain her ultimate burden of proof to support her discrimination and retaliation claims.

### III.
### UNDISPUTED FACTS

Plaintiff began her employment with TCCD in February 2009 as a full-time Instructional Associate. (*Plaintiff's Original Complaint at ¶ 6, DKT. 1*).   The essential functions of the Instructional Associate position include providing feedback for students on writing assignments on a walk-in and scheduled basis, conducting tutoring sessions with students, supervising students working on computers, and working effectively with other writing lab staff, students and faculty members. (*TCCD's Instructional Associate Job Description, App. 1-2; Memorandum from Dr. Christine Hubbard regarding Essential Functions of Instructional Association Position, App. 3-4*). This position also requires excellent customer service and oral communication skills. (*See TCCD's Instructional Associate Job Description, App. 1-2*). Plaintiff admits that her job required her to assist multiple students at the same time and to do so in a polite/professional manner. (*Deposition of Christy Williams Vol. 1 at 60:1-20, App. 25*).

During the fall of 2011, Plaintiff had confrontations with other staff members at TCCD and received several student complaints. On October 20, 2011, Plaintiff had a confrontation with a student worker in the writing lab. The student worker reported that Plaintiff told him that "[she] ha[d] a problem with [him] butting in [her] conversations and being a smart-ass." (*See Williams' Performance Improvement Plan dated March 28, 2012, App. 5-7[1]; See Memorandum from Conrad*

---

[1] The PIP was written, but TCCD decided not to issue the PIP because TCCD wanted to work with Plaintiff without having to escalate discipline.

*Herrera to Sueanne Jones, App. 8*).  Due to this confrontation, the student worker did not feel comfortable returning to work in the writing lab and had to be relocated to a different position. (*See Williams' Performance Improvement Plan, App. 5-7*).

Another confrontation occurred on September 30, 2011 when it was reported to TCCD that Plaintiff scolded a student in the writing lab in the presence of two other writing lab employees; this incident was witnessed by Plaintiff's supervisor, Conrad Herrera. According to the report, Plaintiff confronted the student for not returning a tutoring form and spoke in an angry, loud tone to the student. (*See Williams' Performance Improvement Plan, App. 5-7*). Because of these confrontations and other student complaints, Plaintiff's supervisor assigned Plaintiff two professional development assignments focused on customer service and conflict management. (*See Williams' Performance Improvement Plan, App. 5-7*).

These confrontations and student complaints continued throughout the 2012 calendar year. In the spring of 2012, Ms. Williams had a confrontation with her supervisor. According to Mr. Herrera, Plaintiff told him that he was incompetent, a bad manager because of his limited experience and knowledge base, and that she did not want to work for him anymore.  (*See Williams' Performance Improvement Plan, App. 5-7; See Anita Biber's November 13, 2012 Timeline, App. 9-13*).  As a result of their disagreement, Plaintiff and her supervisor could no longer meet without a third party witness present. Specifically, Plaintiff and her supervisor met only when the Department Dean (Dr. Christine Hubbard) and/or Department Chair (Anita Biber) were also present. (*Deposition of Christy Williams Vol. 1 at 72:13-23, App. 26*).

On April 27, 2012, Lily Calzada, Coordinator of Special Services at TCCD, reported that she saw Plaintiff in the west parking lot having an altercation with a young woman, presumably a student. (*See E-mail Correspondence from Lily Calzada to Dr. Christine Hubbard dated May 2,*

*2012, App. 14-15).*   Ms. Calzada advised that Plaintiff's voice was loud enough that she could hear the argument approximately 10 cars away. Ms. Calzada reported that she did hear Plaintiff say, "I'm sick of you students . . . ." Ms. Calzada advised that she was concerned about Plaintiff's aggressive and hostile attitude. In response, Dr. Christine Hubbard (Dept. Dean) advised Ms. Calzada that she would speak with Plaintiff about the incident and work with Plaintiff "to determine better ways to respond positively to students."  (*See E-mail Correspondence from Lily Calzada to Dr. Christine Hubbard dated May 2, 2012, App. 14-15).*  On September 12, 2012, a student called Mr. Herrera and complained that Plaintiff was unprofessional, mean, and would not help her edit her paper. *(See TCCD Student Complaint, App. 16).*

Because of the deteriorated working relationship between Plaintiff and her supervisor, it was decided that Plaintiff, Mr. Herrera, Anita Biber (Department Chair), and Dr. Christine Hubbard (Dept. Dean) would have meetings to discuss Plaintiff's work performance. On October 31, 2012, Plaintiff, Dr. Hubbard, Ms. Biber, and Mr. Herrera met to address Plaintiff's concerns regarding her supervisor and to identify areas in which the writing lab could improve.  (*Anita Biber's November 13, 2012 Timeline, App. 9-13).*   A follow up meeting was scheduled on November 6, 2012 to allow Mr. Herrera to respond to Plaintiff's criticisms.  (*Anita Biber's November 13, 2012 Timeline, App. 9-13).* The October 31st and November 6th meetings occurred without any incident.

On November 13, 2012, Mr. Herrera and Ms. Biber met with Plaintiff to discuss her Annual Administrative Performance Evaluation.  (*See Anita Biber's November 13, 2012 Timeline, App. 9-13).*   During this meeting, Ms. Biber informed Plaintiff that another instructor, Helen Yakub, expressed concerns that Plaintiff was "very put-out" and rude to her when Ms. Yakub took students to the writing center. (*See Anita Biber's November 13, 2012 Timeline, App. 9-13).*  Plaintiff became

agitated, began to cry uncontrollably and stated she wished she had her mother's cancer. *(Deposition of Christy Williams Vol. 2 at 205:23-206:7, App. 30-31; Anita Biber's November 13, 2012 Timeline, App. 9-13).* Plaintiff became so disruptive that a campus police officer was called to try to calm her down. Also, a nurse and counselor were called to the scene. Plaintiff remained in the writing lab for several hours with the campus police officer and counselor, effectively shutting down the writing lab for the evening. *(See Anita Biber November 13, 2012 Timeline, App. 9-13; Dr. Hubbard's Memorandum, App. 3-4).* Plaintiff left TCCD campus later that evening and was placed on paid administrative leave. *(See Anita Biber November 13, 2012 Timeline, App. 9-13; Dr. Hubbard's Memorandum, App. 3-4).* The meeting to discuss Plaintiff's performance and evaluation was not completed, and Plaintiff was off work from November 14, 2012 to January 2, 2013.

On January 2, 2013 Plaintiff met with Dr. Ricardo Coronado, Associate Vice Chancellor of Human Resources, and Sharion Marshall, EEO Employment Relations Representative, to discuss her performance.[2] According to Plaintiff, Dr. Coronado read from a list of issues that Dept. Chair Anita Biber and/or Dept. Dean Christine Hubbard had addressed in their Memorandum (*Dr. Hubbard's Memorandum, App. 3-4; Anita Biber's November 13, 2012 Timeline, App. 9-13).* Most notably, Plaintiff's performance issues raised in these memoranda, included the following:

- She becomes extremely agitated when trying to multitask. For example, if she is tutoring a student, she becomes frustrated, angry, and stressed when interrupted by students working on computers in the lab.

- She is unwilling to assist walk-in students with questions and instead requires them to leave their essays and schedule a follow-up appointment to receive assistance.

---

[2] During the time period of November 14, 2012 to January 2, 2013, Plaintiff refused to come to TCC to meet with staff to discuss her performance. *(See Sharion Marshall's Notes of January 2, 2013 Meeting, App. 17-18).*

- She has ongoing conflicts with her co-workers in the lab and is insubordinate with her supervisor, Learning Lab Manager Conrad Herrera.

- She has ongoing conflicts with the faculty members who send students to the lab and complains about their assignments and teaching methods.

- She is stressed whenever working in the lab alone and pressures other staff to change their schedules or to come in outside their work hours to assist her.

- She has had several loud outbursts in the lab and in the hallway outside the lab area related to her interpersonal conflicts with student assistants, faculty, and staff.  These outbursts have been disruptive to the other staff in the lab and to students working in the lab.

- She has had complaints from students, staff, and faculty regarding her behavior.

- On November 13, 2012, in response to feedback from Academic Foundations Department Chair Anita Biber about a complaint from an instructor who had brought students to the lab, Ms. Williams became angry, agitated, and began crying uncontrollably.  She then ranted about her unhappiness in the lab and made comments about her inability to manage the stress she feels when working in the Writing Lab. She became so distraught that she asked to go home, and then made comments indicating that she might harm herself. She also requested to be allowed to take drugs in her purse.  We contacted our nurse, a counselor, and a police officer to monitor her behavior and decide how to proceed.  Ms. Williams remained in the Writing Lab break room for several hours with the officer and counselor wailing and ranting so loudly that it was disruptive to the students in the lab and to the other lab stuff. Once Ms. Williams left the campus, she was placed on paid administrative leave pending review of her ability to perform the essential functions of her position.

(*See Dr. Hubbard's Memorandum, App. 3-4; Deposition of Christy Williams Vol. 1 at 265:3-14,*

*App. 45*). Also during this January 2, 2013 meeting, Plaintiff provided a Certification for Fitness

for Duty from her doctor certifying that she could return to work on January 2, 2013 **without any**

**restrictions**. (*Certification for Fitness for Duty, App. 19-20*).  Plaintiff **did not discuss** with her

doctor any specific accommodation that she would need to perform her job. *(Deposition of Christy*

*Williams Vol. 2 at 261:4-263:17, App. 42-44)*. Also, during this meeting with Dr. Coronado on

January 2, 2013, Plaintiff made no reference to her disability and offered no excuse or reason for

her performance issues.[3] On January 7, 2013, Plaintiff was terminated based on her past performance. *(See TCCD Termination Letter, App. 21).*

On July 8, 2013, Plaintiff filed her Charge of age and disability discrimination with the Texas Workforce Commission, claiming that she had been terminated due to her age and disability. *(See Plaintiff's TWC Charge, App. 22).* TCCD denied the Charge and timely submitted its position statement in opposition to the Charge.

On March 30, 2015, Plaintiff filed her lawsuit against TCCD, alleging disability discrimination, including a failure to accommodate, and retaliation under the ADA and Texas Labor Code. Plaintiff also alleges that TCCD's decision to terminate her employment was in retaliation for her use of leave under the FMLA. *(See Plaintiff's Original Complaint, DKT. 1).* Plaintiff contends that her medical conditions impacted her ability to date and socialize and caused her to experience anxiety only when she had to deal with rude and demanding students *(Deposition of Christy Williams Vol. 2 at 293:19—294:11, App. 50-51:11 and 235:18—236:14; App. 32-33).* However, Plaintiff presents no solution for TCCD to identify rude and demanding students and prevent them from using the services of the writing lab.

Despite Plaintiff's contention that TCCD failed to offer her a reasonable accommodation, Plaintiff admits that she was able to perform her job without any accommodation. Specifically, Plaintiff testified that her medical conditions do not prevent her from doing her job. *(Deposition of Christy Williams Vol. 2 at 251:19-23, App. 37 and 241:5-9, App. 34).* In addition, Plaintiff admits that no doctors have told her that she had a disability from which her employers would have

---

[3] While Plaintiff may be able to show that she had various medical conditions, there is no record that Plaintiff ever informed TCCD of her medical conditions until she went out on leave after November 13, 2012.

**DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**          **7**

to accommodate her in order to perform her job. *(Deposition of Christy Williams Vol. 2 at 293:12-18, App. 50).*

Moreover, throughout Plaintiff's tenure, TCCD made many efforts to try to accommodate Plaintiff's complaints. When Plaintiff complained that she was anxious and stressed due to the increased workload in the writing lab, TCCD hired another Instructional Associate, Crystal Bravo, to assist Plaintiff. *(Deposition of Christy Williams Vol. 1 at 47:6-12, App. 24; Anita Biber's November 13, 2012 Timeline, App. 9-13).* When Plaintiff complained that she had a light sensitivity issue, TCCD had a dimmer installed over Plaintiff's desk so that it would dim the lights. Finally, when Plaintiff complained that she did not like to work alone in the writing lab at night, TCCD offered to relocate Plaintiff to the library, but Plaintiff refused. *(Deposition of Christy Williams Vol. 1 at 149:15—150:20, App. 27).*

As to her discrimination and retaliation claims, Plaintiff admits that she is not aware of any TCCD policy whereby TCCD would not fulfill an individual's request for accommodation due to a disability. In addition, Plaintiff is also not aware of any instance where she believes that TCCD retaliated against individuals for exercising their rights under the FMLA or ADA. *(Deposition of Christy Williams Vol. 2 at 270: 10-20; App. 48).*

## IV.
## ARGUMENT SUMMARY

Plaintiff is unable to establish her *prima facie* case for discrimination and retaliation for the following reasons: (1) Plaintiff's FMLA retaliation claim is barred by the two-year statute of limitations; (2) Plaintiff has no evidence that she suffers from a disability under the ADA or Texas Labor Code; (3) Plaintiff cannot demonstrate that she was able to perform the essential functions of her job; and (4) Plaintiff has no evidence that TCCD treated non-disabled employees more favorably than Plaintiff.

Even if the Court finds that Plaintiff established her *prima facie* case, Plaintiff cannot sustain her ultimate burden of proof because TCCD had a legitimate, non-discriminatory reason for its employment decision and Plaintiff cannot show that TCCD's reason was false and pretext for discrimination and/or retaliation.

## V.
## ARGUMENT AND AUTHORITIES

**A.      SUMMARY JUDGMENT STANDARD.**

Summary judgment is proper in a case in which there is no genuine dispute of material fact. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case. *Giles v. General Elec. Co.*, No. Civ-3-97-cv-2774-H, 1999 WL 202573, at *1 (N.D. Tex. April 6, 1999).

**B.      PLAINTIFF'S FMLA RETALIATION CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS.**

Plaintiff cannot prevail on her FMLA retaliation cause of action because the claim was not filed within the applicable limitations period.  A suit for retaliation under the FMLA must be filed within two years after the date of the last event constituting the alleged violation. 29 U.S.C.A. § 2617(C).

Plaintiff was terminated on January 7, 2013 and did not file suit until March 30, 2015, approximately 2 years, 2 months and 23 days after her termination.  Because Plaintiff failed to file her FMLA retaliation claim within the applicable two-year limitations period, Plaintiff's FMLA retaliation claim is barred.  Therefore, TCCD is entitled to summary judgment on Plaintiff's FMLA retaliation claim.

## C.    PLAINTIFF CANNOT MEET HER BURDEN OF PROOF ON HER DISABILITY DISCRIMINATION CLAIM.

Plaintiff cannot prevail on her disability discrimination claim because she cannot establish her *prima facie* case. To establish a *prima facie* case of disability discrimination under the ADA and the Texas Labor Code, Plaintiff must show: (1) that she suffers from a disability; (2) she was qualified for the job; (3) she was subject to an adverse employment action; and (4) she was replaced by a non-disabled person or was treated less favorably than non-disabled employees. *Cortez v. Raytheon Co.,* 663 F. Supp. 2d 514, 522 (N.D. Tex. 2009); *McInnis v. Alamo Community College Dist.*, 207 F.3d 276, 279-280 (5th Cir. 2000).[4]

### 1.   Plaintiff Has No Evidence that She Suffers from a Disability under the ADA or Texas Labor Code Prior to November 13, 2012.

Plaintiff has no evidence that she suffers from a disability as defined by the ADA or the Texas Labor Code. A disability is defined as: "(1) a physical or mental impairment that substantially limits one or more major life activities; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The ADA defines "major life activities" as including, but not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* at § 12102(2)(A).

Plaintiff has no evidence that she suffers from any physical or mental impairment that limits one or more major life activities protected by the ADA. Specifically, Plaintiff alleges that before November 13, 2012 her medical conditions only impacted her ability to date and socialize. *(Christy Williams Deposition Vol. 2 at 293:19-294:11, App. 50-51).*  However, neither socializing

---

[4] The law governing disability discrimination under the ADA and the TCHRA is identical. *Cortez v. Raytheon Co.*, 663 F. Supp. 2d 514, 520-521 (N.D. Tex. 2009).

nor dating are considered major life activities protected by the ADA. *Logan v. Nicholson,* Civ. A-H-04-4178, 2006 WL 1492243, at *6 (S.D. Tex. May 30, 2006); *Wellner v. Town of Westport*, 154 F. Supp. 2d 360, 362 (D. Conn. 2001), *aff'd*, 35 F. App'x 14 (2d Cir. 2002) (recreation and socializing are not considered major life activities); *Pedroza v. Autozone, Inc.*, 536 F. Supp. 2d 679, 697 (W.D. Tex. 2008) (citing to *Wellner v. Town of Westport*).

In *Logan v. Nicholson*, the U.S. District Court for the Southern District of Texas held that functioning in a large group of people and/or socializing is **not** a major life activity. *Logan v. Nicholson*, Civ. A-H-04-4178, 2006 WL 1492243 (S.D. Tex. May 30, 2006) (emphasis added). In that case, an employee claimed that her diagnosed bipolar disorder and post-traumatic stress disorder were mental impairments that substantially limited her ability to function in large groups and to socialize. *Id*. at *4. In analyzing whether functioning in large groups and/or socializing are major life activities, the court ruled that the "ability to get along with others" **was not a major life activity under the ADA**. *Id*. at *5 (citing *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir. 1997)). Instead, the court focused on whether the Plaintiff demonstrated that she was substantially limited in her ability to interact or initiate communication with others at a very basic level. *Id*. The court noted that Plaintiff's mental impairment "caused her to experience stress in staff meetings which were characterized by disagreements and raised voices" and, therefore, Plaintiff was not substantially limited in her ability to interact or communicate with others on a very basic level. *Id*. Thus, the court found that Plaintiff did not meet the definition of being a qualified individual with a disability under the ADA. *Id*. In the case at hand, Plaintiff does not meet the definition of a qualified individual with a disability under the ADA because the ability to socialize is not considered a major life activity under the ADA. Therefore, Plaintiff's disability discrimination claim fails as a matter of law.

Additionally, Plaintiff's ADA claim fails because she has no evidence that her alleged physical or mental condition substantially affects her ability to work a broad range of jobs. If a plaintiff alleges that a disability substantially limits the major life activity of working, a plaintiff must demonstrate "a significant restriction in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *Beaver v. Delta Air Lines, Inc.*, 43 F. Supp. 2d 685, 692 (N.D. Tex. 1999). "A physical or mental impairment that affects the claimant's ability to engage in a narrow range of jobs only or a particular job alone does not 'substantially limit' one or more major life activities." *Logan v. Nicholson*, Civ. A-H-04-4178, 2006 WL 1492243, at * 4 (S.D. Tex. May 30, 2006). The inability to work at the specific job of one's choosing is not a substantial limitation on a major life activity. *Delta Air Lines, Inc.*, 43 F. Supp. 2d at 692 (internal quotations and citations omitted).

In *Beaver v. Delta Air Lines, Inc*., the United States District Court for the Northern District of Texas held that an employee whose visual impairment prevented rapid, continuous reading, but still was able to perform other job functions did not have an impairment that substantially limited her ability to work. *Id*. The court reasoned that while the Plaintiff employee was not able to engage in rapid, continuous reading, she was still able to work in positions that require the ability to read and see. *Id*. In addition, the court noted that the Plaintiff was able to perform other work-related activities. *Id*. Because the court found that the Plaintiff was only precluded from performing, at most, a narrow range of jobs, the court found that Plaintiff's impairment did not constitute a substantial limitation on the major life activity of working. *Id*.

In the case at hand, Plaintiff has testified that her medical conditions only affected her ability to interact with **impatient and rude students**; it did not impact her ability to perform the other functions of her job as an Instructional Associate:

> **Q**: …Were you capable of doing your job when multiple students  came in [and] were not rude to you and were not demanding that you drop everything and to help them at once? …
>
> **A**: … I was capable of doing my job, even if they were rude, even if they were demanding. It just wasn't—it was—it caused me more anxiety…
>
> **Q**: So if you didn't have to deal with students who were demanding and angry, …you can perform your job even when there are multiple students in the lab and you were the only one servicing them?
>
> **A**: I could perform my job even if they were demanding and angry.

*(Deposition of Christy Williams Vol. 2 at 235:18-236:14, App. 32-33)*

In addition, Plaintiff alleges that her medical conditions only affected her ability to perform a narrow subset of activities of her job as an Instructional Associate (dealing with rude and demanding students):

> **Q**: The mental and physical conditions that you had doesn't impair you form working altogether; does it?
>
> **A**: Correct.
>
> **Q**: In other words, there are plenty of jobs out there that you're able to perform despite having these mental and physical conditions; right?
>
> **A**: Yes

*(Deposition of Christy Williams Vol. 2 at 249:20-250:10, App. 35-36; 251:12-18, App. 37).*

Because Plaintiff only alleges that her medical conditions affected her ability to perform a narrow subset of activities of her job as an Instructional Associate (i.e. she becomes anxious when she has to deal with rude and demanding students), Plaintiff cannot establish that her physical or

mental conditions substantially limited her ability to work. Therefore, Plaintiff cannot qualify as a disabled individual under the ADA, and her disability discrimination claim fails as a matter of law.

2. **Plaintiff Cannot Prove That She Was Able to Perform the Essential Functions of the Job.**

Plaintiff cannot demonstrate that she was able to perform the essential functions of an Instructional Associate. Under the ADA, a qualified individual with a disability is one who can perform the essential functions of the position, with or without reasonable accommodation. *McDaniel v. IntegraCare Holdings, Inc.*, 901 F. Supp. 2d 863, 872 (N.D. Tex. 2012). To avoid summary judgment, a plaintiff is required to show that she could perform the essential functions of her job in spite of her disability, or that a reasonable accommodation would have enabled her to perform the essential functions. *See id.*

The essential functions of the Instructional Associate position include: providing feedback for students on writing assignments on a walk-in and scheduled basis, conducting tutoring sessions with students, supervising students working on open-access computers in the writing lab, working effectively with other writing lab staff, students, and faculty members, and being able to thrive in a fast-paced, flexible work environment. (*See TCCD Instructional Associate Job Description, App. 1-2; Dr. Hubbard Memorandum, App. 3-4*). This position also requires excellent customer service and oral communication skills. *Id.*

During Plaintiff's tenure, TCCD received numerous complaints that Plaintiff was unable to multi-task by assisting students on both a walk-in and scheduled basis and became extremely frustrated and agitated when she was required to do so. Plaintiff had on-going conflicts with faculty members and her co-workers in the lab and she was insubordinate to her supervisor, Conrad Herrera. TCCD also received numerous complaints from students, staff and other faculty regarding Plaintiff's behavior. (*See Dr. Hubbard Memorandum, App. 3-4).* Because TCCD received these

complaints against Plaintiff about her inability to exhibit good customer service and communication skills, TCCD legitimately terminated Plaintiff due to her inability to perform the essential functions of the Instructional Associate position.

Plaintiff claims that she could perform the essential functions of her job without any accommodation, so long as the students she serviced were not rude and demanding. (*Deposition of Christy Williams Vol. 2 at 235:18-236:14, App. 32-33*). Plaintiff testified that she experienced stress and anxiety only when she encountered rude and/or demanding students. *Id*. With that said, Plaintiff advised that the accommodations she requested (additional staffing in the events or to close the lab at 5 p.m.) would not have eliminated her stress and anxiety. Specifically, Plaintiff testified:

> **Q**: …the accommodation [you requested] would not entirely resolve your medical condition because you—you continue to have anxiety whenever dealing with rude and demanding students; right?
>
> **A:** Correct.
>
> …
>
> **Q**: …[if] all of those accommodations were made per your request, the anxiety or your medical condition would still persist if a rude, hostile, demanding student came in, correct?
>
> **A**: Yes

(*Deposition of Christy Williams Vol. 2 at 255:5-10, App. 40; 255:24-256:5, App. 40-41*).

Moreover, Plaintiff testified that the accommodations she requested would not have impacted her ability to perform her job functions:

> **Q**: So the accommodations that you were asking for from TCC was to—in order to mitigate these mental and physical conditions that you had; right?
>
> **A**: Correct.

**Q**: It had nothing to do with whether or not you can perform your job?

**A**: Right.

…

**Q**: The only accommodations that you have verbalized or communicated with TCC are adequate staffing, not moving you to the library and/or thirdly closing the lab at 5:00 p.m.; would that be fair to say?

**A**: Yes.

**Q**: Okay. And up until November of 2012, despite having these mental and/or physical conditions, it's your position that you're performing your job well, correct, that you were able to perform your job; correct?

**A**: Yes.

**Q**: And you were able to do so without accommodation; correct?

**A**: Yes.

*(Deposition of Christy Williams Vol. 2 at 252:7-14, App. 38: 252:2-253:11, App. 38-39).* Because the accommodations requested by Plaintiff would not eliminate her anxiety and/or stress when dealing with rude and/or demanding students and had **no impact** on her ability to perform the essential functions of her job, these accommodations were not reasonable or needed under the ADA. Thus, even if the Court were to find that Plaintiff qualifies as a disabled person under the ADA and is entitled to a reasonable accommodation, there is no reasonable accommodation that TCCD could offer to eliminate rude and/or demanding students from utilizing the writing lab.

**3. Plaintiff Has No Evidence that She Was Treated Less Favorably than Non-Disabled Employees.**

Plaintiff has no evidence that TCCD hired a non-disabled individual to replace Plaintiff or that TCCD treated Plaintiff less favorably than non-disabled individuals. To prevail on her disability discrimination claim, Plaintiff must present evidence that TCCD replaced Plaintiff with a non-disabled employee or treated non-disabled employees more favorably than Plaintiff. Plaintiff

readily admits that she has no evidence that TCCD has a policy or custom of treating non-disabled employees more favorably than disabled employees. *(Deposition of Christy Williams Vol. 2 at 270:10-20, App. 48)*. To the contrary, Plaintiff testified that another employee in the writing lab had diabetes and TCCD accommodated her schedule so that she could make her doctor appointments. *(Deposition of Christy Williams Vol. 2 at 269:10-14, App. 47)*. Indeed, Plaintiff admitted that no one at TCC has made any statements indicating a dislike for individuals with disabilities. *(Deposition of Christy Williams Vol. 2 at 268:15—269:9, App. 46-47)*. Because Plaintiff has no evidence that she was treated less favorably than non-disabled employees, Plaintiff's discrimination claim fails as a matter of law.

### D. PLAINTIFF CANNOT SUSTAIN HER ULTIMATE BURDEN OF PROOF TO SUPPORT HER DISCRIMINATION CLAIMS.

Even if the Court were to assume that Plaintiff has carried her *prima facie* burden of proof, her discrimination and retaliation claims should still be dismissed because Plaintiff cannot produce on scintilla of credible evidence to refute the legitimate business reason that led TCCD to terminate her employment. TCCD terminated Plaintiff's employment because she was not able to perform the essential functions of her job as an Instructional Associate. (*See Memorandum from Dr. Christine Hubbard regarding Essential Functions of Instructional Association Position, App. 3-4).*

Once a plaintiff makes a *prima facie* showing, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment action. *Claymex Brick and Tile, Inc. v. Garza*, 216 S.W.3d 33, 35-36 (Tex. App.—San Antonio 2006, no pet.). "If the defendant meets this burden, then the plaintiff must prove that the employer's stated reason for the adverse action was merely pretext for the real, discriminatory purpose." *Id*. Moreover, an

employer's business judgment is entitled to deference from the Court. *See Mendoza v. El Paso County*, No. EP-11-cv-0221-KC, 2012 WL 1952278, at *12 (W.D. Tex. May 30, 2012).

1. **TCCD Has Articulated a Legitimate, Non-Discriminatory Reason for Terminating Plaintiff's Employment.**

TCCD has articulated a legitimate, non-discriminatory reason for terminating Plaintiff's employment: Plaintiff was unable to perform the essential functions of her job as an Instructional Associate as exhibited by her poor performance, which TCCD attempted to address when Plaintiff had her outburst on November 13, 2012:

- Plaintiff was unable to multi-task helping students on an appointment and walk-in basis and often became agitated when required to do so.

- Plaintiff had ongoing conflicts with her co-workers in the lab and was insubordinate with her supervisor, Conrad Herrera.

- Plaintiff had ongoing conflicts with other faculty members who sent their students to the lab.

- Plaintiff did not want to work in the lab alone and pressured other staff members to change their schedules or to come to work outside their work hours to assist her.

- Plaintiff had several loud outbursts in the lab and in the hallway outside the lab related to her interpersonal conflicts with students, faculty and staff.

- Plaintiff received complaints from students, staff, and faculty about her behavior.

- Finally, on November 13, 2012, when told about a complaint from another instructor, Plaintiff became angry, agitated, and began crying uncontrollably. She made comments that indicated she might harm herself and requested to take drugs that were in her purse.

For these reasons, TCCD decided to terminate Plaintiff's employment.

Since TCCD has articulated a legitimate, non-discriminatory reason for its decision to terminate Plaintiff's employment, Plaintiff's *prima facie* case disappears (if it ever existed). To survive summary judgment, Plaintiff must introduce facts that show TCCD's proffered reason is pretextual. Plaintiff's burden of proving pretext is arduous. When rational business reasons are articulated for an employment decision, Plaintiff must show that the employer's reasons are false and pretext for discrimination. *See EEOC v. Louisiana Office of Community Services*, 47 F.3d 1438, 1443 (5th Cir. 1995).

In the case at hand, Plaintiff has no evidence showing that TCCDs proffered reasons for terminating her employer are untrue and pretext for discrimination. Therefore, the Court should dismiss her discrimination and retaliation claims as a matter of law.

## VI.
## CONCLUSION

Plaintiff's claims should be dismissed as a matter of law because Plaintiff cannot prove her *prima facie* case of discrimination and retaliation. Moreover, Plaintiff's FMLA retaliation claim is barred by the statute of limitations. However, even if the Court were to assume that Plaintiff met her *prima facie* burden (which she cannot), TCCD has articulated a legitimate, non-discriminatory reason for its decision (i.e. Plaintiff's inability to perform the essential functions of her job).

To avoid summary judgment, Plaintiff must introduce substantial evidence showing that TCCD's proffered reason was false and pretext for discrimination. Plaintiff cannot meet her burden for one simple reason: there is no evidence that TCCD considered Plaintiff's alleged disability in its decision to terminate her employment. Under these circumstances, Plaintiff cannot meet her ultimate burden of proof, and her claims should be dismissed as a matter of law.

**VII.**
**PRAYER**

For the reasons given above, TCCD respectfully requests that the Court grant its

Motion for Summary Judgment, that Plaintiff's lawsuit be dismissed in its entirety, that the Court

award TCCD its costs, and that TCCD be given all other relief to which it is justly entitled.


Respectfully submitted,

By: /s/ Lu Pham
Lu Pham
State Bar No. 15895430
LPham@dphllp.com
Lauren H. McDonald
State Bar No. 24085357
LMcDonald@dphllp.com

DOWELL PHAM HARRISON,LLP
505 Pecan Street, Suite 101
Fort Worth, Texas 76102
Telephone:     (817) 632-6300
Facsimile:     (817) 632-6313

Angela H. Robinson
angela.robinson@tccd.edu
State Bar No. 24006655
TARRANT COUNTY COLLEGE
DISTRICT
1500 Houston Street
Fort Worth, Texas 76102
(817) 515-5242
(817) 515-5150 – Fax

ATTORNEYS FOR DEFENDANT
TARRANT COUNTY COLLEGE
DISTRICT

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing instrument has been sent via electronic filing and via e-mail on the 22nd day of July, 2016, to all parties at following address:

Donald E. Uloth
Donald E. Uloth, P.C.
18208 Preston Road, Suite D-9 #261
Dallas, Texas 75252
(214) 725-0260
(866) 462-6179
Don.uloth@uloth.pro

/s/ Lu Pham   
Lu Pham
