

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CHRISTY L. WILLIAMS, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION No. 4:15-cv-00241-O |
| | § | |
| TARRANT COUNTY COLLEGE | § | |
| DISTRICT | § | |
| | § | |
| | § | |
| Defendant. | § | |

## JOINT PRETRIAL ORDER

Pursuant to the Court's Order of July 31, 2018 (DKT 123), Plaintiff Christy Williams, and

Defendant Tarrant County College District ("TCCD") (together with Plaintiff, the "Parties"), by

and trough their attorneys, respectfully submit the following Joint Proposed Pretrial Order:

1. **Summary of the Claims and Defenses of the Parties.**

   a. **Plaintiff's Contentions:**

   Plaintiff asserts three claims against Defendant based on the Americans With Disabilities Act 42 U.S.C. § 12101, et seq., and the Texas Commission on Human Rights Act, codified in Chapter 21 of the Texas Labor Code. First, Defendant discriminated against Plaintiff and terminated her employment because of her disabilities, in violation of both statutes. Second, Defendant failed to accommodate her disabilities, in violation of both statutes. Third, Defendant retaliated against Plaintiff after she had exercised her state and federally-protected rights, in violation of both statutes.

   Plaintiff Christy Williams is a resident of Tarrant County, Texas.

   Tarrant County College District ("Defendant" or "TCCD") is a political subdivision of the State of Texas. More specifically, it is a junior college district established by the Texas Legislature pursuant to laws now codified in Chapter 130 of the Texas Education Code. As such it is an independent political institution, distinct from the State itself, like a municipal corporation. Because it is a local institution, created by local authority and supported largely by local revenues, it does not have Eleventh Amendment immunity from the claims asserted in this case.

In February 2009, Plaintiff was hired by and began working for TCCD as a full-time employee. Her job title when hired was Instructional Assistant. On or about September 1, 2012, Plaintiff received a promotion to the position of Instructional Associate, along with a pay raise.

Plaintiff worked in the Writing Lab on TCCD's Northwest Campus throughout the term of her employment. Her job, both before and after the promotion, was to tutor students to help them with their writing assignments and to make them better writers.

Plaintiff suffers from several mental and physical impairments, including attention deficit hyperactivity disorder (ADHD), depression (major depressive disorder and dysthymia), hypothyroidism, post-traumatic stress disorder (PTSD), and anxiety.

Each of the foregoing impairments was at times substantially limiting with respect to several major life activities, including brain function, the operation of her endocrine system working, concentrating, thinking, eating, and sleeping.

Plaintiff was a qualified individual, able to perform the essential functions of her job (with the exception of a few weeks in November – December 2012 when she was approved for and took FMLA leave).

In February 2012, Plaintiff was sexually assaulted. The experience aggravated the symptoms of her various impairments, but Plaintiff continued to perform her essential job functions.

On November 13, 2012, during a meeting with her supervisor, Conrad Herrera, and his supervisor, Anita Biber, Plaintiff lost control of her emotions and she began to cry uncontrollably. After this incident, she requested some time off, and TCCD approved a period of FMLA leave for her own serious health condition.

After November 13, 2012, the TCCD employees above Plaintiff in her chain of command (her immediate supervisor, Conrad Herrera, his supervisor, Anita Biber, and her supervisor, Christine Hubbard) believed she had impairments and came to regard her as having one or more impairments. Without ever trying to understand what might have triggered Plaintiff's behavior on November 13, 2012, they began making plans to terminate Plaintiff because of their own assumptions and prejudices. While Plaintiff was out on her approved medical leave, instead of fulfilling TCCD's statutory duty to engage in an interactive process to address Plaintiff's impairments, TCCD was collecting information it could use as an excuse to terminate Plaintiff, and drafting a memo recommending termination.

During her FMLA leave, Plaintiff provided information to TCCD which candidly disclosed that she had medical conditions, and although she did not explicitly ask for reasonable accommodations before she attempted to return to work, she provided enough information to TCCD that she triggered the employer's obligation to engage in the interactive process required by the ADA and TCHRA. TCCD made no effort to assess Plaintiff's abilities, and it did not engage in any interactive discussions to determine if Plaintiff could continue to perform the essential functions of her position.

TCCD was closed for approximately two weeks in late December.  By late December Plaintiff's condition had improved, and she planned to return to work on when the school reopened on January 2, 2013.

On January 2, 2013, Hubbard sent a memorandum to TCCD's head of HR, Ricardo Coronado, recommending Plaintiff's termination.  Hubbard's memo grossly mischaracterizes the essential functions of Plaintiff's position, and in discovery TCCD has failed to produce (and still seeks to exclude from evidence) documents proving that Hubbard's description of the essential functions is a fabrication, manufactured as pretext to conceal TCCD's discrimination.

Meanwhile, also on January 2, 2013, Plaintiff went to see her treating psychiatrist, Dr. Raju Indukuri.  Indukuri completed a Certificate of Fitness for Duty indicating Plaintiff was able to return to work without any of the physical restrictions listed on the form but asking TCCD - "Please make reasonable accommodations."

After her appointment with Dr. Indukuri, Plaintiff took the Certificate to TCCD and gave it to Coronado's assistant.

Immediately after that, Plaintiff had a short meeting with Coronado (Defendant's head of HR) and Sharion Marshall.  Coronado had the Certificate asking for reasonable accommodations, and he asked Plaintiff what she wanted.  Williams talked about how her workload had increased and the Writing Lab was short-staffed, and the fact that she usually worked alone in the evenings, which was stressful for reasons such as security. Coronado mentioned that it might help if TCCD hired additional staff for the Writing Lab (which they had already done or were in the process of doing), and it might help if Williams did not have to work alone during the evening. Williams agreed that those accommodations would be reasonable. The meeting concluded with Coronado saying he would get back to Williams, but for the time being she should consider herself still on leave.

TCCD terminated Plaintiff's employment 5 days after this meeting, on January 7, 2013. At no time between November 13, 2012 and January 7, 2013 did anyone at TCCD assess Plaintiff's condition or her ability to perform the essential functions of her position.  Rather, Hubbard looked back to things that had occurred (or were alleged to have occurred) on or prior to November 13, 2012, and used these past incidents as the basis of her recommendation to Coronado that Plaintiff should be fired.

In other words, TCCD did not even attempt to fulfill its duties under the ADA and TCHRA to engage in an interactive process to assess Plaintiff's condition and determine whether she could return to work, with or without accommodations.  Instead, TCCD just fired her without responding to her request for accommodations.

If there had been an assessment by TCCD and an interactive discussion, TCCD would have realized Plaintiff was able to perform the essential functions of her position, and there may even have been accommodations identified through good-faith negotiations and discussions that would have been appropriate.  However, because TCCD chose to terminate Plaintiff instead of following

**JOINT PRETRIAL ORDER**                                                                                   3

the procedures required by the ADA and TCHRA, TCCD violated the ADA and TCHRA and failed to accommodate.

Plaintiff contends that at the time of her termination, she was a qualified individual with a disability.

Plaintiff contends she was terminated because of her disability, in violation of the ADA and TCHRA.

Plaintiff contends that she was regarded as having an impairment by Defendant, and Defendant terminated her because of that perception, in violation of the ADA and TCHRA.

Plaintiff contends that her disability was a motivating factor for the termination and therefore TCCD violated chapter 21 of the Texas Labor Code.

Plaintiff contends she engaged in ADA/TCHRA-protected activities by asking to take time off as a reasonable accommodation, by taking time off as a reasonable accommodation, and by seeking to return to work with reasonable accommodations.

Plaintiff contends TCCD retaliated against her by terminating her employment because she had engaged in activities protected under the ADA and TCHRA.

Plaintiff contends that the reasons Defendant has stated as justification for its unlawful conduct are not the true reasons and they are merely a pretext or cover up for the real reasons.

Plaintiff contends she fulfilled her duty to try and mitigate her damages.

Plaintiff contends she has lost wages due to TCCD's unlawful conduct.

Plaintiff contends she has also incurred damages due to her lost benefits of employment.

Plaintiff contends TCCD's unlawful conduct has caused her pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life, and that such damages are likely to continue into the future.

Plaintiff contends she is entitled to recover attorney fees for both the ADA and TCHRA claims.

Plaintiff contends she is entitled to recover both pre-judgment and post-judgment interest on her damages.

Plaintiff contends that TCCD cannot show it would have terminated her anyway in January 2013 in the absence of its discriminatory, retaliatory, and otherwise unlawful motives.

Plaintiff contends there is no evidence supporting any of the affirmative defenses pleaded by Defendant.

Plaintiff contends Defendant is not entitled to jury instructions and question on any affirmative defenses that were not included in its answer, such as the business-necessity defense, undue hardship defense, and the direct-threat defense.

### b.  Defendant's Contentions:

At all times relevant to this suit, TCCD believed that its conduct was in compliance with the ADA, TCHRA, and all other applicable laws. Plaintiff was employed by TCCD as an Instructional Associate in the Writing Lab of TCCD's Northwest Campus. While employed at TCCD, Plaintiff had confrontations with other TCCD staff/faculty, had student complaints, and was unable to perform other essential functions of the Instructional Associate position. TCCD terminated Plaintiff's employment due to her failure to perform the essential functions of her job as an Instructional Associate and because of her inappropriate, unprofessional behavior prior to and including the November 13, 2012 incident.

TCCD denies that it discriminated against Plaintiff due to any actual, perceived, or alleged disability in violation of the ADA/TCHRA. TCCD denies that Plaintiff has a disability as defined by the ADA/TCHRA.  TCCD denies that Plaintiff has a physical or mental impairment that substantially limits one or more major life activities.  TCCD denies that it regarded Plaintiff as having an impairment as defined by the ADA/TCHRA. TCCD denies that Plaintiff was subjected to an adverse employment action because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.  TCCD denies that it was made aware of Plaintiff's alleged disability or impairments or the resulting limitations of same. TCCD contends that Plaintiff was not a qualified individual under the ADA/TCHRA. TCCD denies that Plaintiff could perform the essential functions of her employment position with or without a reasonable accommodation.  TCCD denies that Plaintiff was terminated because of any actual, perceived, or alleged disability. TCCD denies that Plaintiff's alleged disability was a motivating factor in TCCD's decision to terminate Plaintiff.

TCCD denies that it violated the ADA/TCHRA by failing to accommodate Plaintiff.  TCCD denies that Plaintiff was a qualified individual with a disability as defined by the ADA/TCHRA. Plaintiff was not able to perform the essential functions of her job with or without a reasonable accommodation.  TCCD denies that it knew of Plaintiff's alleged disability and its consequential limitations.  TCCD denies that it failed to provide Plaintiff with reasonable accommodations as required by the ADA/TCHRA.   TCCD contends that the interactive process under the ADA/TCHRA was not triggered.  TCCD denies that Plaintiff specifically identified her alleged disability, its resulting limitations, and suggested a reasonable accommodation.  TCCD denies that it failed to interact with Plaintiff to identify and implement reasonable accommodations. TCCD denies that it refused to provide Plaintiff with reasonable accommodations.   TCCD contends that Plaintiff did not ask for a reasonable accommodation due to her alleged disability.

TCCD denies that it retaliated against Plaintiff in violation of the ADA/TCHRA. TCCD denies that Plaintiff engaged in activity protected under the ADA/TCHRA or that TCCD was aware that Plaintiff engaged in such protected activity.  TCCD denies that it retaliated against/terminated

Plaintiff because she allegedly engaged in protected activities by exercising her rights under the ADA and TCHRA.

TCCD denies that it violated the ADA, TCHRA, or any other applicable laws.

In the unlikely event that it is found that TCCD terminated Plaintiff due to an impermissible motivating factor, TCCD contends that it terminated Plaintiff due to her inappropriate, unprofessional behavior prior to and including the November 13, 2012 incident. Therefore, TCCD would have terminated Plaintiff in the absence of any impermissible motivating factor.

TCCD denies that it knowingly, intentionally, or in reckless disregard of Plaintiff's rights violated the ADA or TCHRA.

Plaintiff's claims are barred, in whole or in part, by the doctrine of sovereign/governmental immunity. At all times alleged in the Complaint, TCCD was and is a governmental entity. Accordingly, all or a portion of Plaintiff's claims and/or damages asserted against TCCD are barred by the common law doctrine of sovereign/governmental immunity and the statutory doctrines of sovereign/governmental immunity set forth in the Texas Tort Claims Act and/or the Texas Commission on Human Rights Act ("TCHRA"). Plaintiff's claim for punitive damages is barred by the doctrine of sovereign immunity. Moreover, TCCD is a political subdivision of the State of Texas and, therefore, the Eleventh Amendment deprives the Court of jurisdiction and authority to award damages, including punitive damages against TCCD.

Any and all alleged adverse employment actions/discriminatory acts toward Plaintiff that occurred 300 days before Plaintiff filed her Charge of Discrimination with the EEOC/TWC are barred by the statute of limitations and/or her failure to exhaust administrative remedies. To the extent Plaintiff bases her claims on any conduct that occurred 300 days before she filed her EEOC/TWC Charge, it is also time barred by the statute of limitations and/or her failure to exhaust administrative remedies.

To the extent Plaintiff's claims are broader than those listed in her Charge of Discrimination or Complaint, such claims are untimely and barred by the statute of limitations and/or her failure to exhaust administrative remedies. Plaintiff filed her Charge of Discrimination on July 8, 2013 and, therefore, any alleged discriminatory act or practice prior to September 11, 2012 is time barred. To the extent Plaintiff failed to timely file her claims in this lawsuit and failed to timely file her claims with the TWC/EEOC, Plaintiff is barred from recovery based on her failure to meet the limitation times. Further, to the extent Plaintiff has failed to exhaust available administrative remedies with the TWC/EEOC, Plaintiff is precluded from prosecuting this action against TCCD for discrimination and retaliation. Plaintiff refused the EEOC's invitation to participate in the mediation process, and therefore, Plaintiff has not availed herself of all remedies and processes provided by the TWC/EEOC. Additionally, Plaintiff failed to exhaust internal administrative processes provided by TCCD and, therefore, failed to exhaust TCCD's internal procedural prerequisites and administrative remedies available to her.

Plaintiff failed to lodge a retaliation claim with the EEOC/TWC and, therefore, her retaliation claim is bared due to her failure to exhaust her administrative remedies.

TCCD's actions toward Plaintiff have been based upon a good faith exercise of the responsibility conferred to make professional judgments regarding Plaintiff's employment and have been made without regarding to Plaintiff's alleged disability, and in a manner which was not retaliatory. TCCD contends that it terminated Plaintiff due to her inappropriate, unprofessional behavior prior to and including the November 13, 2012 incident. Therefore, TCCD would have terminated Plaintiff in the absence of her exercise of her rights under the ADA.

TCCD exercised reasonable care to prevent and promptly correct any acts alleged to constitute discriminatory behavior and retaliation by promulgating policies against discrimination and retaliation. These policies were distributed to all employees and at all times were available, both in "online" and "hard copy" versions.

TCCD's employment decisions related to Plaintiff were not made on the basis of any illegal discrimination or retaliation. TCCD had legitimate, non-pretextual reasons for its employment action with regard to Plaintiff due to Plaintiff's failure to behave in a professional manner.

Plaintiff's claims are barred by the business judgment rule. TCCD had a job-related business necessity for the decisions made which form the basis of Plaintiff's claims.

TCCD asserts that Plaintiff has failed to make reasonable efforts to mitigate her alleged damages and, to the extent Plaintiff has mitigated her damages, Defendant is entitled to an offset of those amounts.

TCCD contends that Plaintiff cannot satisfy her *prima facie* case of disability discrimination, retaliation, or failure to accommodate under the ADA/TCHRA. TCCD contends that Plaintiff cannot sustain her ultimate burden of proof to support her claims under the *McDonnell Douglas* burden-shifting framework. Plaintiff cannot show that TCCD's legitimate, non-discriminatory reasons for the adverse employment action were pretext and that discrimination was the real reason.

Defendant asserts that Plaintiff never pled that she suffered from Major Depressive Disorder and/or Dysthemia and, therefore, TCCD contends that Plaintiff may not present any evidence or testimony regarding such claims.

TCCD asserts that Plaintiff has specifically testified that her alleged mental/physical impairments only impact her ability to date or socialize and did not impact any other major life activities. Therefore, TCCD objects to Plaintiff's contention that her alleged physical/mental impairments are substantially limiting to her brain function, the operation of her endocrine system, working, concentrating, thinking, eating, and sleeping.

TCCD asserts that Plaintiff has never pled that "TCCD employees above Plaintiff in her chain of command (her immediate supervisor, Conrad Herrera, his supervisor, Anita Biber, and her supervisor, Christine Hubbard) believed [Plaintiff] had impairments and came to regard her as having one or more impairments." Because Plaintiff has never asserted that Conrad Herrera, Anita

Biber, and Christine Hubbard regarded her as having an impairment, Plaintiff should not be able to testify regarding same.

TCCD objects to any testimony or evidence offered by Plaintiff that TCCD engaged in a pattern or practice of discrimination or that TCCD implemented policies, procedures, or practices that encouraged or permitted discrimination because Plaintiff has not pled or produced any evidence in support of such an allegation.

TCCD objects to any testimony or evidence offered by Plaintiff as to her allegation that she has pain and suffering, inconvenience, mental anguish, and loss of enjoyment because Plaintiff failed to timely produce the medical records of her treating physician Dr. Steven Childers. The discovery deadline in this case was June 24, 2016 and Plaintiff did not produce these records until September 24, 2016, approximately 3 months past the deadline. Therefore, Plaintiff should not be allowed to present evidence on this issue.

TCCD objects to any testimony or evidence offered by Plaintiff concerning the cause and/or incidents that form the basis of Plaintiff's alleged impairment, condition, diagnosis, or disability that are not due to an act or omission of TCCD. In particular, TCCD objects to any testimony offered by Plaintiff concerning her childhood abuse and her February 2012 sexual assault. Such testimony about Plaintiff's childhood molestation/assault or her sexual assault that occurred off-campus, in another state, by a non-TCCD employee have no relevance to Plaintiff's disability discrimination and failure-to-accommodate claims. Moreover, any such testimony would be unfairly prejudicial and will deprive TCCD of a fair and impartial trial.

TCCD contends that the documents designated as Plaintiff's exhibits 63-69 are not policies or procedures of TCCD. TCCD denies that it failed to produce or deliberately concealed the documents designated as Plaintiff's exhibits 63-69.

TCCD contends that Plaintiff should not be permitted to testify or introduce evidence regarding her FMLA leave for a serious health condition/FMLA leave generally because such claims are no longer present in this lawsuit and, therefore, such evidence is irrelevant. Moreover, such testimony would be unfairly prejudicial to TCCD and deprive TCCD of a fair and impartial trial.

TCCD contends that Plaintiff should not be permitted to testify or introduce evidence alleging that she was retaliated against in violation of the ADA for requesting and taking time off because Plaintiff failed to pled such allegations. In reality, Plaintiff pled that she requested and took time off in support of her FMLA retaliation claim which has been dismissed based on the statute of limitations. Plaintiff should not be permitted to re-try her FMLA retaliation claim by disguising the allegations to be in support of her ADA retaliation claim.

TCCD contends that Plaintiff is not entitled to introduce any evidence or testimony regarding her attorney fees because Plaintiff never disclosed the amount of fees she incurred or her attorney fee invoices, despite TCCD's requests for same and Plaintiff's promise to produce. Moreover, Plaintiff failed to produce her attorney's fees invoices despite discovery requests for same. Therefore, Plaintiff should not be allowed to introduce any testimony or evidence regarding her attorney's fees.

2. **Statement of Stipulated Facts:**

   a. Plaintiff was an employee of TCCD in the Writing Lab at TCCD's Northwest Campus.

   b. Plaintiff was employed as a full-time Instructional Associate.

   c. On January 2, 2013, Plaintiff met with Dr. Coronado, Associate Vice Chancellor of Human Resources, and Sharion Marshall, EEO Employment Relations Representative.

   d. On January 7, 2013, Plaintiff was terminated.

3. **List of Contested Issues of Fact:**

   The following are the key contested issues of fact:

   a. **Plaintiff**:

   1. The facts concerning which TCCD officials were involved in the decision to terminate Plaintiff's employment, and who made the final decision, is contested, because TCCD had told different stories about this at different times.

   2. There are contested issues of fact concerning Plaintiff's essential job functions. There is a written job description that describes the essential functions, but the memo Dr. Hubbard wrote as justification for the termination describes other duties that are not listed in the job description and were never communicated to Plaintiff.

   3. There are contested issues of fact concerning the Writing Lab's policies and procedures. TCCD contends the writing tutors who worked at the lab were required to see all students who walked in without an appointment who had not given the tutor a draft of their paper in advance, but TCCD's own printed brochure (which it tried to conceal from Plaintiff by not producing it in discovery) tells students to make an appointment and drop off their paper in advance.

   4. As support for Plaintiff's termination, TCCD relies heavily on events which took place in 2011, long before Plaintiff was promoted and given a raise. Thus, there are contested issues of fact concerning what happened in 2011, and whether those events are even relevant in this case.

   5. Defendant disputes whether Plaintiff had any physical or mental impairments, and if so whether they substantially limited her with respect to one or more major life activities or bodily functions (or would have been substantially limiting absent mitigating measures, or when the impairment(s) were active). These matters are therefore contested issues of fact in this case.

6.  Although Plaintiff worked in her position for almost four years with no disciplinary action or negative documentation in her personnel file, TCCD now claims she was unable to perform the essential functions of her position. There is therefore a disputed question of fact whether Plaintiff was a qualified individual with a disability, able to perform the essential functions of the position.

7.  TCCD points to multiple incidents as support for Plaintiff's termination. Many of the allegations are too vague to know what TCCD is referring to, but where it is possible to know what the incident was, in virtually every instance TCCD's allegations are disputed by Plaintiff. These incidents are therefore contested facts in this case.

    a.  For example, in the Spring of 2012 Plaintiff had a conflict with her supervisor because he broke his promise to let Plaintiff know in advance if he found it necessary to disclose facts concerning her sexual assault to anyone else at TCCD. Herrera reacted badly by yelling at Plaintiff which triggered flashbacks to the assault, and after that she was uncomfortable meeting with Herrera one-on-one.

    b.  On or about April 27, 2012, Plaintiff spoke to a student who parked in faculty reserved parking, and the student became loud and confrontational.

8.  Plaintiff was never assigned professional development (element k) courses because of inappropriate behavior. Rather, in the normal course of business a minimum number of professional development hours were required each year. Plaintiff was never told that any such assignment was due to any poor performance on her part.

9.  Plaintiff disputes Defendant's account of the events described in Hubbard's memorandum recommending termination:

    a.  Plaintiff was able to multitask.

    b.  Plaintiff did assist students who came in without an appointment to the best of her ability, even though doing so was contrary to policy and the other writing tutors refused to do so and made students leave their essays and schedule an appointment at a later time to get assistance.

    c.  Plaintiff did not have ongoing conflicts with her coworkers in the lab.

    d.  Plaintiff was never insubordinate to her supervisor, Conrad Herrera.

    e.  Plaintiff did not have ongoing conflicts with faculty members, and to the contrary, she had positive interactions with them and often received compliments from faculty members who saw an improvement in the writing of their students as a result of Plaintiff's instruction and assistance.

f.  Plaintiff did not make complaints about the assignments and teaching methods of faculty members. To the contrary, she was familiar with the styles of most faculty members and she was able to tailor her comments and suggestions to suit what the teachers wanted to see from their students.

g.  Plaintiff understandably experienced some anxiety when working in the Writing Lab alone at night, but she never pressured other staff to change their schedules or to come in outside their work hours to assist her.

h.  The Writing Lab did not have enough staff to meet the goal of always having two persons on duty at all times, and Plaintiff was routinely scheduled to work alone after 5 p.m. weekdays and on some Saturdays.

i.  During the Fall of 2012 TCCD was seeking to hire one or more additional persons as staff for the Writing Lab to alleviate the short-staffing problem.

j.  Plaintiff did not have any loud outbursts in or near the Writing Lab.

k.  If there were complaints about Plaintiff's behavior they were never shared with Plaintiff, except for a complaint made by Jessica Bermudez on September 12, 2012 to Conrad Herrera. Anita Biber looked into the facts and concluded that Plaintiff had behaved appropriately.

l.  The November 13, 2012 meeting with Herrera and Biber was scheduled to be a short meeting for Plaintiff to provide her self-evaluation, which was a preliminary step to getting the final performance appraisal from her supervisor.

m.  At the November 13, 2012 meeting, Herrera and Biber surprised Plaintiff by bringing up complaints made by faculty member Helen Yakub. Plaintiff disputes the account of events as reported by Helen Yakub because Plaintiff made every effort to assist Yakub and the students she brought into the Writing Lab unannounced and unscheduled.

n.  Plaintiff lost her composure in the November 13, 2012 meeting and cried uncontrollably for some time, but she was not loud or disruptive. Curtis Fukuchi was in the Writing Lab for several hours during the November 13, 2012 meeting and he did not hear a disruption.

10.  After the November 13, 2012 meeting, Plaintiff asked to take time off under the FMLA due to her own serious health condition.

11.  TCCD approved FMLA time off for Plaintiff in November and December 2012 due to Plaintiff's own serious health condition. Although the case no longer includes an FMLA claim, this is still relevant to issues concerning what TCCD knew, and when

**JOINT PRETRIAL ORDER**                                                          11

and whether it had sufficient information to trigger TCCD's obligation to try and accommodate Plaintiff.

12. During Plaintiff's FMLA leave, Plaintiff informed TCCD of her medical issues, sharing more-than-enough information to trigger TCCD's duty to engage in the interactive process.

13. TCCD refused to engage in any interactive discussion with Plaintiff and instead made preparations to terminate her employment.

14. On January 2, 2013 Plaintiff explicitly requested reasonable accommodations.

15. TCCD did not in good faith discuss or consider reasonable accommodations.

16. TCCD terminated Plaintiff on January 7, 2013 for retaliatory and unlawful reasons without having engaged in an interactive discussion of reasonable accommodations.

17. The parties dispute the reasons given by TCCD for its actions. Plaintiff claims TCCD was motivated by retaliation. Plaintiff also contends she was terminated because of her disability, that disability was a motivating factor for her termination (thus meeting the applicable standard under the Texas Labor Code), and she was terminated for retaliatory reasons because she had asked to take leave, took leave, and asked for accommodations all as allowed by the ADA and TCHRA.

18. Plaintiff agrees with items 22-32 listed by Defendant in section 3(b) below, although item 27 should be reworded to say "impairment" rather than "disability."

19. Plaintiff took a period of medical leave starting on November 13, 2012.

20. Plaintiff sought to return to work on January 2, 2013.

21. After meeting with Ricardo Coronado on January 2, 2013, Plaintiff was told to consider herself still on leave and she was not allowed to return to work.

22. Plaintiff diligently tried to mitigate her damages, and she has worked several jobs, but she has nevertheless lost income compared to what she would have made if she had remained employed at TCCD. The amount of back pay is contested.

23. Plaintiff also lost her health insurance, so she has incurred compensable damages in the form of lost benefits. The amount attributable to lost benefits is contested.

24. Defendant's unlawful conduct have caused Plaintiff pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other noneconomic losses. The amount is uncertain and therefore needs to be decided by a jury.

25. Whether TCCD would have terminated Plaintiff anyway based on her prior performance is contested.

b. **Defendant**:

1. The essential functions of the Instructional Associate position include providing feedback for students on writing assignments on a walk-in and scheduled basis, conducting tutoring sessions with students, supervising students working on computers, assisting students, individually or in groups, with lesson assignments to present or reinforce learning concepts, and working effectively with other writing lab staff, students and faculty members.

2. The Instructional Associate position requires excellent customer service and oral communication skills.

3. The Instructional Associate position requires the employee to be able to assist multiple students at the same time and to do so in a polite/professional manner.

4. Whether the brochures drafted by Plaintiff and individual staff constitute a policy or procedure of TCCD when those brochures were not sent for approval through TCCD's policy approval process.

5. On or about September 30, 2011, Plaintiff had a confrontation with a student in the writing lab. Plaintiff confronted the student for not returning a tutoring form, spoke in an angry, loud tone with the student, and stood in the student's personal space.

6. On or about October 20, 2011 Plaintiff had a confrontation with a student worker in the writing lab. Due to this confrontation, the student worker did not return to the lab and was relocated to a different position.

7. As a result of the September 30, 2011 and the October 20, 2011 conflicts, Plaintiff was assigned two professional development assignments focused on customer service and conflict management.

8. In the Spring of 2012, Plaintiff had a confrontation with her supervisor. During the confrontation, Plaintiff raised her voice and told the supervisor that he was incompetent and a bad manager, among other things. As a result of this disagreement, Plaintiff and her supervisor could no longer meet without a third party witness present.

9. Plaintiff and her supervisor met only when the Dean of Humanities and/or Department Chair were also present.

10. In March of 2012, the Dean of Humanities expressed her desire for Plaintiff to work her evening hours in the NW library to increase the number of students served in the evening by the lab and so that Plaintiff would not be alone during the evening. Plaintiff refused to move her evening hours to the library.

11. On or about April 27, 2012, Plaintiff had a confrontation with a student in the west parking lot.

12. TCCD counselor, Lily Covio-Calzada, reported the April 27, 2012 incident to Dr. Hubbard, Dean of Humanities.

13. In September 2012, Plaintiff's title was changed from Instructional Assistant to Instructional Associate. The change was not merit based, but was based on a re-alignment at TCCD's Northwest Campus to correspond with classifications at other TCCD campuses.

14. On September 12, 2012, a student called Plaintiff's supervisor and complained that Plaintiff was unprofessional, mean, and would not help edit her paper.

15. On or about October 31, 2012, Plaintiff, the Dean of Humanities, the Department Chair, and her supervisor met to address Plaintiff's concerns regarding work related issues.

16. On or about November 6, 2012, a follow-up meeting was held to allow Plaintiff's supervisor an opportunity to respond to Plaintiff's criticisms.

17. On or about November 13, 2012, Plaintiff, her supervisor, and the Department Chair met to discuss Plaintiff's Annual Administrative Performance Evaluation.

18. During the November 13, 2012 meeting, the Department Chair told Plaintiff that another instructor, Helen Yakub, expressed concerns that Plaintiff was "very put-out" and rude to her when Ms. Yakub took students to the writing center.

19. At the November 13, 2012 meeting, Plaintiff became agitated and began to cry uncontrollably. A nurse, campus police officer, and counselor were called to the scene to calm her down. After several hours, the TCCD counselor was able to calm Plaintiff down to the point where she could leave to go home. Due to Plaintiff's unprofessional behavior in response to legitimate criticism, the writing lab had to be closed early that evening.

20. On or about November 13, 2012, the Dean of Humanities communicated her desire that Plaintiff no longer work in the writing lab to Human Resources.

21. Plaintiff was placed on paid administrative leave following the November 13, 2012 incident.

22. In the morning of January 2, 2013, Dr. Hubbard issued her written memorandum recommending the termination of Plaintiff. Dr. Hubbard attached Anita Biber's notes to the memorandum.

23. In the afternoon of January 2, 2013, Plaintiff met with Dr. Coronado, Associate Vice Chancellor of Human Resources, and Sharion Marshall, EEO Employment Relations Representative, to discuss her performance.

24. Whether Plaintiff provided a Certificate for Fitness for Duty to Dr. Coronado prior to or during the January 2, 2013 meeting.

25. During the January 2, 2013 meeting, Dr. Coronado read from a list of issues that Department Chair Anita Biber and/or Department Dean Christine Hubbard had addressed in their Memorandum.

26. During the January 2, 2013 meeting, Plaintiff made no reference to her disability, its limitations, and offered no excuse or reason for her performance issues.

27. During the January 2, 2013 meeting, Plaintiff did not ask for a reasonable accommodation due to her alleged disability.

28. On January 7, 2013, Plaintiff was terminated based on her past performance.

29. Whether Plaintiff has a disability as defined by the ADA/TCHRA.

30. Whether Plaintiff has a physical or mental impairment that substantially limits a major life activity.

31.  Whether TCCD regarded Plaintiff as having an impairment.

32. Whether Plaintiff was terminated because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

33. Whether TCCD knew that Plaintiff had a disability as defined by the ADA/TCHRA.

34. Whether Plaintiff told TCCD that she had a disability as defined by the ADA/TCHRA.

35. Whether Plaintiff is a qualified individual/qualified for the job of Instructional Associate under the ADA/TCHRA.

36. Whether Plaintiff was able to perform the essential functions of her job as an Instructional Associate with or without a reasonable accommodation.

37. Whether the Instructional Associate position required the employee to assist students on a walk-in basis.

38. Whether Plaintiff refused to assist students on a walk-in basis.

39. Whether TCCD terminated Plaintiff due to her alleged disability.

40. Whether Plaintiff's alleged disability was a motivating factor in TCCD's decision to terminate Plaintiff.

41. Whether TCCD treated Plaintiff less favorably than non-disabled employees.

42. Whether Plaintiff was a qualified individual with a disability as defined by the ADA/TCHRA.

43. Whether TCCD knew of Plaintiff's alleged disability and its consequential limitations.

44. Whether TCCD failed to make reasonable accommodations for the known limitations of Plaintiff's alleged disability.

45. Whether Plaintiff specifically identified her disability, the resulting limitations, and suggested a reasonable accommodation.

46. Whether Plaintiff triggered the interactive process under the ADA/TCHRA.

47. Whether TCCD was required to engage in the interactive process under the ADA/TCHRA with Plaintiff.

48. Whether TCCD failed to engage in the interactive process under the ADA/TCHRA.

49. Whether Plaintiff should be permitted to now claim/testify that requesting and taking time off is a reasonable accommodation under the ADA/TCHRA when Plaintiff never pled same.

50. Whether Plaintiff requested a reasonable accommodation.

51. Whether Plaintiff engaged in protected activity under the ADA/TCHRA.

52. Whether TCCD retaliated against/terminated Plaintiff because she engaged in protected activity under the ADA/TCHRA.

53. Whether Plaintiff can now claim/testify that requesting and taking time off was a protected activity under the ADA/TCHRA when she never pled same.

54. Whether Plaintiff can now claim/testify that she was retaliated against in violation of the ADA for requesting and taking time off when she never pled that this as a basis in support of her ADA retaliation claim.

55. Whether TCCD had a legitimate business reason for terminating Plaintiff.

56. Whether Plaintiff told a student worker that "[she] ha[d] a problem with [him] butting in [her] conversations and being a smart-ass."

57. Whether during the Fall of 2011, Plaintiff confronted a student for not returning a tutoring form and spoke in an angry, loud tone to the student.

58. Whether Plaintiff was assigned two professional development assignments focused on customer service and conflict management due to these confrontations and other student complaints.

59. Whether Plaintiff told her manager that he was incompetent, a bad manager because of his limited experience and knowledge base, and that she did not want to work for him anymore.

60. Whether Plaintiff acted inappropriately when she confronted a student in the west parking lot in April of 2012 in which Plaintiff said "I'm sick of you students..."

61. Whether Plaintiff was unable to multi-task and, therefore, was unable to perform the essential functions of her job.

62. Whether Plaintiff was unwilling to assist walk-in students with questions and instead required them to leave their essays and schedule a follow-up appointment to receive assistance.

63. Whether Plaintiff was insubordinate with her supervisor.

64. Whether Plaintiff pressured other staff members to change their schedules or to come in outside their work hours to assist her.

65. Whether Plaintiff asked TCCD to hire additional volunteers and/or employees to assist her in performing her job duties.

66. Whether Plaintiff asked TCCD to reassign other workers to assist her with her job duties.

67. Whether Plaintiff had several loud outbursts in the lab and in the hallway outside the lab area related to her interpersonal conflicts with student assistants, faculty, and/or staff.

68. Whether Plaintiff became angry, agitated, and began crying uncontrollably during a meeting with Conrad Herrera and Anita Biber on November 13, 2012.

69. Whether Plaintiff ranted about her unhappiness in the lab and made comments about her inability to manage the stress she feels when working in the Writing Lab during the November 13, 2012 incident.

70. Whether Plaintiff became so distraught during the November 13, 2012 incident that she said she wished she had her mother's cancer.

71. Whether Plaintiff became so distraught during the November 13, 2012 incident that she asked to go home and made comments indicating that she might harm herself.

72. Whether Plaintiff was terminated because of her inappropriate, unprofessional behavior at work prior to and including the November 13, 2012 incident.

73. Whether TCCD would have terminated Plaintiff in the absence of her exercise of her rights under the ADA/TCHRA.

74. Whether TCCD attempted to hire additional employees/volunteers to work the evening shift in the writing lab along with Plaintiff.

75. Whether TCCD attempted to accommodate Plaintiff's alleged light sensitivity by installing a dimmer switch and whether TCCD's installation of a dimmer switch was a reasonable accommodation.

76. Whether TCCD offered to relocate Plaintiff to the library in response to Plaintiff's safety concerns and concerns regarding working alone at night and whether such offer to relocate Plaintiff to the library was a reasonable accommodation.

77. Whether Plaintiff refused TCCD's offer to relocate to the library.

78. Whether TCCD installed a panic button for Plaintiff in response to Plaintiff's safety concerns and concerns regarding working alone at night and whether the installation of the panic button for Plaintiff was a reasonable accommodation.

JOINT PRETRIAL ORDER                                                                 18

79. Whether Plaintiff told TCCD that she had a physical or mental impairment that affected a major life activity or bodily function.

80. Whether Plaintiff requested an accommodation to help her perform the essential functions of her job.

81. Whether Plaintiff had ADHD, depression (major depressive disorder and dysthymia), hypothyroidism, post-traumatic stress disorder (PTSD), and anxiety.

82. Whether the individuals who made the decision to terminate Plaintiff were aware of her alleged disability.

83. As to Plaintiff's contested fact numbers 10 and 11 regarding FMLA leave, TCCD does not contest that Plaintiff took FMLA leave. However, such testimony regarding her leave for a serious health condition or that TCCD approved such leave is irrelevant because there are no pending FMLA claims in this lawsuit. Moreover, such testimony is unduly prejudicial and will deprive TCCD of a fair and impartial trial concerning the live claims in this case. Therefore, Plaintiff should not be permitted to testify or introduce evidence regarding FMLA leave.

84. As to Plaintiff's contested fact number 17 regarding ADA retaliation, Plaintiff never pled that she was retaliated against in violation of the ADA for requesting leave or taking leave. In fact, these allegations were in support of her FMLA retaliation claim as seen in Paragraph 26 of Plaintiff's Original Complaint. Plaintiff is trying to re-try her FMLA claims (which included FMLA retaliation) by now disguising those same allegations as the basis for her ADA claims. Plaintiff should not be permitted to reargue her FMLA claims by disguising them as ADA claims.

4. **List of Contested Issues of Law**:

a. **Plaintiff:**

1. Plaintiff disputes TCCD's claim of governmental immunity. TCCD is fully liable for the claims asserted in this case. Plaintiff concedes TCCD has immunity from punitive damages, which is why Plaintiff did not ask for punitive damages in her Complaint, but all other remedies sought may be assessed and enforced against TCCD.

2. Plaintiff disputes Defendant's items 2-5 below. Plaintiff has fully complied with her discovery obligations, and with respect to the doctors, TCCD could have (but chose not to) seek discovery from Plaintiff's physicians.

3. Regarding item 6 in Defendant's list below, Plaintiff does not contend that a mandatory presumption of discrimination or retaliation arises if the jury does not believe the employer's stated reason(s). Rather, the jury is permitted to infer discrimination or retaliation in this situation.

4. Regarding Defendant's issue of law number 9, Plaintiff disputes that there is a requirement of substantial limitation at the time of the termination because an impairment can still be a disability (a) if it is episodic or in remission, or (b) if mitigating measures are keeping the impairment from being substantially limiting at the time. *See* 29 U.S.C. § 12102(D) and (E).

5. The Court must decide whether to allow TCCD to present evidence concerning ADA/TCHRA affirmative defenses that it did not plead in its Answer, such as a business necessity defense, undue hardship, and direct threat. TCCD is asking to include instructions and questions on these defenses in the jury charge, but TCCD did not plead these defenses in its Answer, and it has not disclosed any evidence supporting these defenses in discovery. Plaintiff therefore opposes the introduction of evidence on these points because they are not relevant.

6. If allowed to assert a direct-threat affirmative defense, there is an issue of law to be decided concerning the scope of the defense. By definition, a "direct threat" is "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodations." 29 U.S.C. 12111(3) (emphasis added). The threat in question must therefore be a threat to others – persons other than the employee herself. However, the Fifth Circuit Pattern Jury Charge on the direct threat defense is worded to include possible harm to the plaintiff as something that can be a direct threat. See Fifth Circuit PJC 11.12. The pattern jury charge is incorrect, and it will need to be modified by the Court in order to avoid error in the Court's Charge.

7. In accordance with the Federal rules of Civil Procedure, attorney fees are decided by motion after trial, and Plaintiff disputes Defendant's claim that she is barred from recovery of attorney fees.

b. **Defendant:**

1. Removed.

2. Whether Plaintiff's claims and/or damages are barred by the doctrines of sovereign/governmental immunity and/or the 11th Amendment.

3. Whether Plaintiff's treating physicians may testify about Plaintiff's conditions prior to Fall of 2011.

4.  Whether Plaintiff may testify about her damages beyond those listed in her Initial Disclosures.

5.  Whether Plaintiff may testify and/or put on evidence regarding her alleged mental anguish because all medical records from her treating physician, Dr. Childers, were not timely produced.

6.  Whether Plaintiff may testify and/or put on evidence regarding her disability because she failed to timely produce records of her treating physician, Dr. Childers, despite discovery requests for same and an agreement between counsel to produce same.

7.  Whether there is a presumption that an employer was motivated by discrimination or retaliation if Plaintiff disproves the reasons offered by TCCD.

8.  Whether ADHD, depression (major depressive disorder and dysthymia), PTSD, hypothyroidism, and anxiety are considered physical or mental impairments that affect a major life activity under the ADA.

9.  Whether dating and/or socializing are major life activities under the ADA.

10. Whether a physical or mental impairment must substantially limit a major life activity or bodily function at the time of termination.

11. Whether Plaintiff's alleged impairments were substantially limiting with respect to major life activities.

12. Whether a reasonable accommodation must allow an individual with a disability to perform the essential functions of the job.

13. Whether an employer is required to restructure a job if that would reallocate the job's essential functions.

14. Whether an employer is obligated to hire additional employees or reassign existing workers to assist an employee with a disability.

15. Whether the ADA requires an accommodation that would cause other employees to work harder, work longer hours, or lose opportunities.

16. Whether Plaintiff's requested accommodations would have imposed an undue hardship on Defendant.

17. Whether Plaintiff's claims are barred by the business judgment rule since TCCD had a job related business necessity for the decisions made which form the basis of Plaintiff's claims.

18. Whether an employee must state that he or she needs an adjustment in working conditions or duties because of a medical condition-related reason.

19. Whether Plaintiff may put on evidence regarding her attorney's fees when she failed to disclose the amount of fees incurred in her disclosure responses as well as the actual fee invoices despite TCCD's request for same.

20. Whether an employee must specifically identify her disability, the resulting limitations, and suggest a reasonable accommodation before an employer's duty to engage in the interactive process under the ADA is triggered.

21. Whether the interactive process concerning accommodation requests is triggered when the employee fails to state the modification in working conditions or duties is due to a disability and its resulting limitations.

5. **Estimated Length of Time for Trial:**

The parties estimate the length of time for trial is 4-5 days—jury trial.

6. **List of Additional Matters that Might Aid in Disposition of Case:**

1. Rulings on any pending motions, including:
   a. ECF 63, Plaintiff's Request for Ruling on Defendant's Claim of Privilege;
   b. ECF 74, Plaintiff's Motion for Leave to Designate Additional Trial Exhibits and Request for a Jury Instruction Concerning Defendant's Failure to Produce These Documents; and
   c. ECF 95, Plaintiff's Motion to Compel, Request for a Hearing, and Request for Sanctions.
2. Plaintiff invokes The Rule for trial, Rule 615 of the Federal Rules of Evidence.

Respectfully submitted,

By: /s/ Lu Pham
Lu Pham
State Bar No. 15895430
LPham@dphllp.com
Lauren H. McDonald
State Bar No. 24085357
LMcDonald@dphllp.com

DOWELL PHAM HARRISON, LLP
505 Pecan Street, Suite 101
Fort Worth, Texas 76102
Telephone:     (817) 632-6300
Facsimile:     (817) 632-6313

Carol Bracken
Carol.Bracken@tccd.edu
State Bar No. 20861400
TARRANT COUNTY COLLEGE
DISTRICT
1500 Houston Street
Fort Worth, Texas 76102
(817) 515-5137
(817) 515-5150 – Fax

ATTORNEYS FOR DEFENDANT
TARRANT COUNTY COLLEGE
DISTRICT

/s/ Donald E. Uloth
Donald E. Uloth
Texas Bar No. 20374200
18208 Preston Rd. Suite D-9 # 261
Dallas, TX 75252
(214) 725-0260
(866) 462-6179 Fax
don.uloth@uloth.pro

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

On August 10, 2018, I served a true and correct copy of this document to Lu Pham and Lauren McDonald, counsel for Defendant, by email.

/s/ Donald E. Uloth
Donald E. Uloth